UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENSON HOGANBERRY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EXPERIAN INFORMATION ) <br> SOLUTIONS, INC., TRANS UNION, ) <br> LLC, EQUIFAX INFORMATION ) <br> SERVICES, LLC, CITIBANK, N.A., ) <br> DISCOVER BANK, WELLS FARGO ) <br> BANK, N.A., COMENITY BANK and ) <br> CAPITAL BANK, N.A., ) <br> ) <br> Defendants. ) | No. 23 C 3690 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff Denson Hoganberry sued a group of credit reporting firms and banks under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, for sharing and reporting information related to several accounts that he alleges were the product of identity theft. One of these accounts is maintained by Defendant Citibank. Citibank contends that Hoganberry's claims are subject to a mandatory arbitration clause and has moved to compel arbitration of Hoganberry's claims and to stay this action while the arbitration is pending. For the reasons stated below, the motion is denied without prejudice pending limited discovery and, if necessary, a summary trial on the issue of whether a valid arbitration agreement exists between the parties.

### BACKGROUND

Plaintiff, a resident of Joliet, Illinois, filed this action on June 12, 2023. (*See* Compl. [1] ¶ 9.) In his complaint, he alleged that near the end of 2022, he discovered that he was the victim of identity fraud and that a number of credit card accounts were appearing on his consumer credit reports that he knew nothing about and had never opened. Among these was an account listed in the complaint as "CITICARDS/CBNA Account # ending in 3918 – (the 'Citicards Account')."

(*Id.*) Plaintiff disputed these fraudulent accounts multiple times, contacting credit reporting agencies Equifax, TransUnion, and Experian and filing reports with the local police and the Federal Trade Commission. (*Id.* ¶¶ 22–26.) He asserts in his complaint that the Defendant banks, including Citibank, should have received notice of these disputes, but that they failed to reasonably investigate and instead continued to report information about the purportedly fraudulent accounts to the credit reporting agencies. (*Id.* ¶¶ 33, 98–101.) Plaintiff brought a range of FCRA claims against the Defendant credit reporting agencies and banks, including Citibank. Among those is a claim under Section 1681s-2(b), which imposes on such banks a duty to investigate disputed information and report their results to consumer reporting agencies.

On August 9, 2023, Citibank filed a Motion to Compel Arbitration and Stay Action [36] pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., and Federal Rules of Civil Procedure 12(b)(1) and 81(a)(6)(B). In its supporting Memorandum [37] (hereinafter "Def.'s Br."), Citibank alleged that the Card Agreement associated with the disputed Citicards Account contained a written provision mandating arbitration of disputes. The text of the arbitration provision, included as an exhibit to Citibank's motion, reads as follows:

### Covered Claims

- **You or we may arbitrate** any claim, dispute, or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

  Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, you or our negligence, statutory or regulatory provisions, or any other source of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

(Card Agreement at 10, Ex. 1 to Citibank N.A.'s Mot. Compel Arbitration and Stay Action (hereinafter "Card Agreement").) Citibank contends that Plaintiff agreed to arbitrate claims against it and that his FCRA claims fall within the ambit of this broad arbitration language. In support of its motion, Citibank filed a declaration from Kelly Booth, an employee with personal knowledge of the company's business practices regarding its credit card accounts. (Booth Decl. [37-1] ¶¶ 1–3, Ex. A to Def.'s Br.) As set forth in that declaration, Citibank's records showed the company issued a MasterCard account ending in the same digits as Plaintiff's disputed account on or around April 28, 2020. (*Id.* ¶ 4.) Booth further declared that a Card Agreement containing the arbitration provision was mailed to Plaintiff two days later on April 30, 2020, that this Agreement provided instructions for opting out of binding arbitration, and that Citibank had no records showing that the mailing had been returned as undeliverable or that Plaintiff had returned an opt-out notice. (*Id.* ¶¶ 6–10.) Included as exhibits to Booth's declaration were: (1) a copy of the April 30, 2020 approval notice for the disputed account, listing Hoganberry's name and an address in Joliet, Illinois; (2) a copy of the Card Agreement, including the arbitration provision; and (3) a billing statement for the period ending on September 30, 2020, showing records of transactions and a payment made to the disputed account. (*Id.* ¶¶ 6, 7, 11.) The billing statement is redacted in Citibank's exhibit, making the exact amounts and dates of this alleged transaction history——as well as the source of the payment or payments[1]—unclear. (*See* Ex. 3 to Booth Decl.)

Plaintiff filed a Memorandum in Opposition to Citibank's Motion to Compel Arbitration [43] (hereinafter "Pl.'s Br.") As an attachment to his brief, Plaintiff filed a sworn declaration in which he denied ever having created the account, signing up for any Citibank credit card, agreeing to arbitration with Citibank, or otherwise having any relationship with the company whatsoever.

---

[1] Booth's declaration describes only a singular "payment" made on the account during this billing period (Booth Decl. ¶ 11), but Citibank's briefing describes multiple "payments" (Def.'s Br. at 1; Def.'s Reply at 2.). Citibank's redactions prevent the court from determining which is accurate.

3

(Hoganberry Decl. [43-1] ¶ 4.) Plaintiff demanded discovery and a trial on the issue of whether he had agreed to the arbitration clause that Citibank is now attempting to enforce. (Pl.'s Br. at 7.) In a reply memorandum, Citibank contends that Plaintiff failed to produce sufficient evidence to raise a genuine dispute of fact as to whether he had entered into the agreement. (Citibank's Reply Further Support Mot. Compel Arbitration and Stay Action [47] (hereinafter "Def.'s Reply").)

## LEGAL STANDARD

The FAA "reflects both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). A court should grant a motion to compel arbitration where there is (1) a valid written agreement to arbitrate between the parties, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005); *see* 9 U.S.C. §§ 2, 4. However, "a party cannot be required to arbitrate any dispute which he has not agreed so to submit." *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023) (citation and internal quotation marks omitted). Whether an agreement exists is determined by the court based on "ordinary state-law principles that govern the formation of contracts"—i.e., "the existence of an offer, acceptance, and consideration." *Id.* at 701.

A party seeking to compel arbitration has the initial burden of showing a written agreement to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). If this burden is satisfied, "[the] party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact" as to whether the parties validly entered into this agreement. *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 725 (N.D. Ill. 2017) (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). In the Seventh Circuit, this evidentiary burden is akin to that of summary judgment under Rule 56: the district court must accept the non-movant's evidence as

true and draw all inferences in their favor.[2] *Tinder*, 305 F.3d at 735. The non-movant will not succeed in resisting arbitration, however, "by generally denying the facts upon which the right to arbitration rests . . . [but] must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* In some cases, limited discovery may be necessary before the court can determine whether this burden has properly been met. *Burks v. Wal-Mart Stores, Inc.*, No. 12 C 8457, 2013 WL 4777358, at *2 (N.D. Ill. Sept. 5, 2013).

If the nonmoving party successfully establishes a genuine dispute of fact on the issue of whether the parties agreed to arbitrate, the FAA dictates that "the court shall proceed summarily to the trial thereof." *Kass*, 75 F.4th at 700 (citing 9 U.S.C. § 4). The FAA allows that "[i]f no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Again, limited discovery on the issue of formation may be appropriate before a full trial is scheduled. *Bradley v. Meijer Stores L.P.*, No. 23 CV 1269, 2023 WL 3042984, at *5 (N.D. Ill. Apr. 21, 2023) (citing *Deputy v. Lehman Bros.*, 345 F.3d 494, 509–10, 511 (7th Cir. 2003)).

## **DISCUSSION**

Citibank claims that Plaintiff Hoganberry is bound by an arbitration agreement for a credit card account that Hoganberry denies having signed up for in the first place. Plaintiff Hoganberry is not bound by the arbitration clause in an agreement to which Hoganberry is not a party; this issue must be resolved before the court can address the legal question of whether the language of the arbitration clause encompasses Plaintiff's FCRA claims.

---

[2] Citibank argues in a footnote that the applicable standard of review is that of Federal Rule 12(b)(3) and not Rule 56, citing in support *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809–10 (7th Cir. 2011), and *Soucy v. Capital Management Services, L.P.*, No. 14 C 5935, 2015 WL 404632, at *3 (N.D. Ill. Jan. 29, 2015). But *Faulkenberg* and *Soucy* both involved motions to dismiss based on arbitration clauses, which those courts construed as motions to dismiss for improper venue. When, as in this case, a party has moved to stay the proceedings and enforce an arbitration agreement, the proper standard to apply in evaluating factual disputes over the agreement's formation is that of summary judgment. *See Kass*, 75 F.4th at 700 (citing *Tinder*, 305 F.3d at 735).

Citibank has met its initial burden of producing a written agreement to arbitrate in the form of the Card Agreement filed in support of its motion. The question now is whether there is a genuine dispute of material fact concerning Plaintiff's having (1) personally opened the disputed account and (2) accepted the Card Agreement's arbitration provision by either using the card or failing to cancel the Account.[3] In support of its position, Citibank has offered a declaration from its employee stating that an account was opened in Plaintiff's name in April 2020, presenting the notices and documents associated with this account, and providing a copy of the account statement showing transaction and payment activity in September 2020. (*See* Booth Decl. ¶ 4; Exs. 1, 2, 3 to Booth Decl.) In a sworn declaration submitted in response, Plaintiff claims never to have opened any such account or having any relationship with Citibank. (*See* Hoganberry Decl.)

That declaration is sufficient, in the court's view, to satisfy Plaintiff's evidentiary burden at this stage. The Seventh Circuit held earlier this year in *Kass v. PayPal, Inc.* that an accountholder's express denial via written declaration of having received arbitration terms for an online service is enough to raise a triable issue of fact over whether a valid arbitration agreement was formed. 75 F.4th at 704. Citibank argues that Plaintiff's declaration is "self-serving"[4] and that Plaintiff is required to identify "specific evidence in the record," not just "bare unsupported denials," in order to meet his burden. (Def.'s Reply at 3.) But Citibank only cites one pre-*Kass* case in support of this point, *Tonkawa Tribe of Indians of Oklahoma v. Scientific Games Corp.*,

---

[3] The Card Agreement contains a choice-of-law provision stating that it is governed by South Dakota law. (*See* Card Agreement at 11.) In South Dakota, either use of a credit card or failing to cancel a credit card account within 30 days of opening is sufficient to create a binding contract. S.D. Codified Laws § 54-11-9.

[4] Citibank's attempted aspersions on Plaintiff's declaration as "self-serving" are also contrary to well-established Seventh Circuit caselaw. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (noting that "affidavits . . . and other written statements by their nature are self-serving" and that, "[a]s we have repeatedly emphasized over the past decade, the term "selfserving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment") (citing cases).

No. 21-cv-04626, 2022 WL 1591719 (N.D. Ill. 2022). The cited portion of *Tonkawa* merely reiterates the general standard for factual disputes over arbitration agreements that the Seventh Circuit announced in *Tinder v. Pinkerton Security* and later applied in *Kass*, and the case is otherwise factually inapposite. *See id.* at *3 (quoting *Tinder*, 305 F.3d at 735).[5]

Multiple pre-*Kass* district courts in this circuit have reached the same conclusion.[6] Indeed, only last year, another judge of this court denied a motion by Citibank to enforce the very same arbitration clause at issue in this case. *See Collins v. Citibank, N.A.*, No. 21-CV-00008, 2022 WL 683661 (N.D. Ill. Mar. 8, 2022).[7] *Collins* involved a factual dispute over whether a new Citibank cardholder had validly received the terms and conditions of his account—including the arbitration

---

[5] *Tinder* itself found that an employee's mere statement that she "d[id] not recall" seeing an arbitration provision included with her paycheck failed to raise a genuine dispute of material fact over whether she had agreed to arbitrate. *Tinder*, 305 F.3d at 735–36; *see also Pohlman v. NCR Corp.*, No. 12 CV 6731, 2013 WL 3776965, at *4–5 (N.D. Ill. July 17, 2013) (citing *Tinder* in holding that plaintiff's "statements that he does not recall seeing or receiving the [arbitration] provision and letter fail to rebut the presumption that the mailed offer was delivered"); *Versmesse v. AT&T Mobility LLC*, No. 3:13 CV 171, 2014 WL 856447, at *5 (N.D. Ind. Mar. 4, 2014) (reaching the same conclusion). But *Kass* specifically distinguished *Tinder* by holding that a party's unequivocal *denial* of having agreed to arbitrate *is* sufficient to meet this burden. 75 F.4th at 704 ("[T]here is nothing conclusory about such a factual denial. When a party denies signing a contract, committing a crime, or doing anything else, the denial is an assertion of fact." (citation omitted)).

[6] *See, e.g., Bradley*, 2023 WL 3042984, at *4–5 (noting that "[t]here is a growing consensus among the courts of appeals that a party's sworn statement that he did not sign an arbitration agreement—if spelled out in sufficient detail—is sufficient to create a genuine issue of fact") (citing cases); *Muhammad v. Tree*, No. 18 C 04192, 2020 WL 1530750, at *4 (N.D. Ill. Mar. 31, 2020) (denying motion to compel arbitration where plaintiff "unequivocally denie[d] ever receiving or signing the Arbitration Agreement"); *Gupta v. Morgan Stanley Smith Barney, LLC*, No. 17 C 8375, 2018 WL 2130434, at *2 (N.D. Ill. May 9, 2018) (finding that "when the plaintiff submits an affidavit in which he denies receiving a letter, a triable dispute exists"), *aff'd*, 934 F.3d 705 (7th Cir. 2019); *Sanato v. Sears, Roebuck & Co.*, 259 F. Supp. 3d 873, 876 (N.D. Ill. 2016) ("That this evidence comes only from Plaintiff's sworn declaration does not preclude a finding of triable fact . . . The Seventh Circuit has repeatedly rejected the argument that plaintiffs may not rely on 'self-serving' evidence to create a material factual dispute."); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 788 (N.D. Ill. 2011) (denying motion where plaintiffs "contend[ed] in sworn declarations that they never saw the . . . Terms and Conditions [mandating arbitration], let alone agreed to be bound by them").

[7] Citibank's failure to acknowledge this case is disappointing, as is its failure to meaningfully engage with *Haynes v. TransUnion, LLC*, No. 19-CV-7157(JS)(ARL), 2021 WL 7906567 (E.D.N.Y. Sept. 30, 2021) and the other identity-fraud cases discussed below.

clause—in the mail. That case also pitted Citibank's word (via another declaration from Kelly Booth, plus accompanying business records) against the plaintiff's (via his own declaration denying that he had received the mailed terms). The *Collins* court weighed these competing declarations and found that "Plaintiff's sworn denial . . . raises a genuine dispute such that the Court cannot compel arbitration at this time." *Id.* at *3.

While most of these cases address factual disputes over whether a plaintiff *received* arbitration terms after voluntarily initiating a contractual relationship with a defendant, their logic applies with at least equal force to disputes over whether the plaintiff ever initiated such a relationship at all. Multiple courts outside the Seventh Circuit have also held that "allegations of identity fraud in the formation of an arbitration agreement may create a dispute of material fact as to whether the parties agreed to arbitrate their claims." *Haynes v. TransUnion, LLC*, No. 19-CV-7157(JS)(ARL), 2021 WL 7906567, at *7 (E.D.N.Y. Sept. 30, 2021), *adhered to on reconsideration*, No. 19-CV-7157(JS)(ARL), 2022 WL 1228927 (E.D.N.Y. Apr. 25, 2022).[8] *Haynes* involved an attempt by Citibank to enforce its form arbitration agreement against an alleged customer, under facts highly similar to this case: the plaintiff alleged that her identity had been stolen and used to sign up for a number of fraudulent accounts, including a disputed Citibank account. The court rejected Citibank's motion to compel arbitration in light of (1) the plaintiff's affidavit stating as much and (2) Citibank's failure to produce evidence that she had actually used the account after its creation. *Id.* at *6.

---

[8] *See also, e.g.*, *Garry v. Credit Acceptance Corp.*, No. 19-CV-12386, 2020 WL 1872361, at *2 (E.D. Mich. Apr. 15, 2020); *Martinez v. Trans Union LLC*, No. 8:20-CV-1951-T-33SPF, 2020 WL 6701607, at *1 (M.D. Fla. Nov. 13, 2020); *Gonzalez v. Comenity Bank*, No. 119CV00348AWIEPG, 2019 WL 5596800, at *9 (E.D. Cal. Oct. 30, 2019); *Accardo v. Equifax, Inc.*, No. CV185030JSAKT, 2019 WL 5695947, at *7 (E.D.N.Y. Aug. 9, 2019); *Hudson v. Babilonia*, No. 14-CV-1646, 2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015); *Maranto v. Citifinancial Retail Servs., Inc.*, No. 05-CV-0359, 2005 WL 3369948, at *2 (W.D. La. Nov. 18, 2005); *cf. Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 349–50 (D. Md. 2015) (finding that "if Plaintiff truly did not sign the loan applications that Defendant has proffered, then she necessarily . . . could not be compelled to arbitrate her TCPA and FCRA claims if she did not agree to arbitration in the first place," but that her mere statement that she had "no knowledge" of the entity seeking to compel arbitration was insufficient to raise a genuine dispute of material fact).

The issue here is slightly closer than in *Haynes,* both because Plaintiff has not provided as much detail in the pleadings or declaration to support a claim of identity fraud,[9] and because Citibank has produced evidence showing that transactions and payments were made on the disputed account in September 2020. (*See* Ex. 3 to Booth Decl.) The court also acknowledges Citibank's point that it is curious that Plaintiff failed to discover the purportedly fraudulent account for over two years after its creation.

Nonetheless, Plaintiff's unequivocal declaration precludes granting Citibank's motion to compel arbitration at this stage. As in summary judgment, the court must draw all reasonable inferences in Plaintiff's favor and avoid making credibility determinations when weighing his evidence against Citibank's. To this end, while Citibank's records do show purchases and payments made on the disputed account, there is at this stage no evidence that Plaintiff was responsible for these transactions, since Citibank's redacted exhibit gives no indication of their source. *See Gonzalez*, 2019 WL 5596800, at *7–8 (denying motion to compel arbitration on sole basis of plaintiff's declaration, even though defendant provided evidence of purchase and payment activity on the disputed account). Further, because Plaintiff has not yet had the benefit of discovery, it would be unfair at this point to expect production of evidence beyond Plaintiff's own word to rebut Citibank's records. *See Hudson*, 2015 WL 1780879, at *2 (denying motion to compel arbitration where plaintiffs only provided affidavit in support of their claims of identity fraud, since they "had little chance to carry out discovery before the . . . defendants filed the motion to

---

[9] The plaintiff in *Haynes* stated in her declaration that she was not living at her home during the period when the disputed account was opened, and that an identity thief had stolen some of her mail during her absence. *Haynes*, 2021 WL 7906567, at *6. Plaintiff, in contrast, merely avers that he "never agreed to arbitrate any claims with Citibank" and fails to provide any theory in his declaration or complaint as to how the purported identity fraud might have taken place. *Cf., e.g., Garry*, 2020 WL 1872361, at *1 (denying motion to compel arbitration where plaintiff submitted written declaration stating her belief that "the car involved in this transaction was procured fraudulently by an acquaintance of mine . . . who had prepared my taxes and had access to my financial records and personal identification information," along with an identity theft affidavit, police report, and employment time sheets showing her location elsewhere at the time of the alleged signature).

compel"); *see also Bradley*, 2023 WL 3042984, at *3 (since "there is no record without discovery[,] [i]t is only fair . . . that courts afford a party denying the existence of an arbitration agreement some opportunity to bolster their denial through targeted discovery"); *Burks*, 2013 WL 4777358, at *2 ("[E]ven if the responding party has a good faith basis to claim that the arbitration agreement is unenforceable, he may need additional evidence to meet the burden described above."). If Plaintiff is able to prove identity theft, it would be "contrary to logic and common sense" to enforce "terms of a credit application agreement for an account that was opened by Defendant at the request of a defrauder." *Maranto*, 2005 WL 3369948, at *2.

The only remaining question is what procedure the court should employ to determine whether Plaintiff actually opened the disputed account and accepted its arbitration terms. The FAA states that if a genuine issue concerning formation is identified, "the court shall proceed summarily to the trial thereof," and that the court may "hear and determine such issue" without a jury if the nonmoving party does not request one. 9 U.S.C. § 4. Citibank requests that, in the event the court finds a genuine issue of material fact, the court should schedule a "summary evidentiary hearing" to resolve the issue. (Def.'s Reply at 5.) Plaintiff requests "a trial on that issue, after both parties have had a chance to take discovery on that issue," but does not specify whether he demands that this trial be by jury. (Pl.'s Br. at 7.) In keeping with the approach that past district courts have taken, the court will first allow the parties to conduct limited discovery and will then conduct a status conference to determine if either a jury or bench trial is required. *See Collins*, 2022 WL 683661, at *4; *see also Cannon*, 2019 WL 568581, at *3 (listing approaches taken in other circuits).

## **CONCLUSION**

Citibank's Motion to Compel Arbitration and Stay Action [36] is hereby denied without prejudice. The parties are directed promptly to engage in discovery on the issue of the enforceability of the arbitration agreement. An in-person status conference is set for January 9,

2024 at 9:30 a.m. for a report on the completion of such discovery. The parties are encouraged to consider the possibility of settlement.

ENTER:

Dated: November 22, 2023

_____
REBECCA R. PALLMEYER
United States District Judge

11